IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Keith Love, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| LaserShip, Inc.; Doe Corporation 1–10; John Doe 1–10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.　　Keith Love, on behalf of himself and similarly situated individuals, brings this action against Defendants LaserShip, Inc.; Doe Corporation 1–10; John Doe 1–10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), O.R.C. 4111.01, et seq., O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), O.R.C. § 2307.60, and for unjust enrichment.

2.　　LaserShip, Inc. is a delivery company that specializes in "last-mile delivery" services.

1

3. To accomplish its business purpose, LaserShip, Inc. relies on delivery drivers to deliver packages for its customers across the United States.

4. Defendants classify their delivery drivers as "independent contractors."

5. However, the economic reality of the working relationship is such that the delivery drivers are "employees" of LaserShip, Inc. under the FLSA and state wage and hour laws.

6. Plaintiff seeks to represent LaserShip, Inc.'s delivery drivers who have been misclassified as independent contractors (the "Delivery Drivers").

7. Defendants pay Plaintiff and similarly situated Delivery Drivers on a piece-rate basis for each package they deliver. That rate is set by Defendants.

8. Defendants require Delivery Drivers to cover business expenses, take deductions directly from the Delivery Drivers' pay to cover business expenses, and affirmatively charge Delivery Drivers for business expenses that are incurred for Defendants' benefit.

9. Delivery drivers' jobs are straightforward and entirely controlled by Defendants' policies and the laws of the road. Delivery Drivers pick up packages assigned to them by Defendants from Defendants' warehouse, drive the packages to customers, scan the package using Defendants' app or scanning device before leaving it on the customer's front porch, and then leave to drop off the next package.

10. Defendants would have no business if they did not have thousands of Delivery Drivers working for them.

11. Under Defendants' system, Delivery Drivers work for very low incomes. The only way for them to make more money is to work for more hours at the same low rates of pay.

12.     Defendants repeatedly and willfully violated the Fair Labor Standards Act, Section 34a, the OMFWSA, and the Ohio Prompt Pay Act by failing to pay overtime hours when drivers worked in excess of 40 hours per week, and by failing to adequately reimburse Delivery Drivers for their delivery-related expenses, thereby failing to pay Delivery Drivers the legally mandated minimum wages and overtime for all hours worked.

13.     As a result of Defendants' conduct, they have unjustly enriched themselves at the Delivery Drivers' expenses.

14.     All Delivery Drivers, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

15.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

16.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

17.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim herein occurred in this district.

## Parties

**Plaintiff**

**Keith Love**

18.     Plaintiff Keith Love is a resident of Ohio.

19.     Defendants classified Plaintiff as an independent contractor.

20.     As a matter of economic reality, Plaintiff was an "employee" of all the Defendants pursuant to the FLSA, Section 34a, OMFWSA, and the Ohio Prompt pay Act.

21.     Plaintiff was engaged interstate commerce.

22.     Plaintiff has given written consent to join this action.

**Defendants**

**LaserShip, Inc.**

23.     Defendant LaserShip, Inc. is a Delaware corporation that is registered as a foreign corporation in the state of Ohio.

24.     "LaserShip" is the name that appeared on Plaintiff's paystubs for work he completed for Defendants.

25.     LaserShip Inc. has or had substantial control over Plaintiff and similarly situated Delivery Drivers' working conditions, and over the unlawful policies and practices alleged herein.

26.     LaserShip, Inc. has or had direct and/or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated Delivery Drivers.

27.     At all relevant times, LaserShip, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated Delivery Drivers, including, but not limited to, hiring, firing, disciplining, recordkeeping, payroll, pay rates, deductions, and other practices.

28.     LaserShip, Inc. is/was an "employer" of Plaintiff and similarly situated Delivery Drivers as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

29.     At all relevant times, LaserShip Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

30.     LaserShip, Inc.'s gross revenue exceeds $500,000 per year.

**Doe Corporation 1–10**

31.     Upon information and belief, Defendants may own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' LaserShip operation, and qualify as "employers" of Plaintiff and the Delivery Drivers as that term is defined by the FLSA and Ohio wage law.

32.     Upon information and belief, one such additional Defendant may be the company doing business under the name "OnTrac."

33.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1–10**

34.     Upon information and belief, there are individuals who also qualify as "employers" of Plaintiff and the Delivery Drivers at LaserShip as that term is defined by the FLSA and Ohio wage law.

35.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

36. LaserShip, Inc. is a delivery company that specializes in "last-mile delivery" services.

37. LaserShip, Inc. offers delivery services in a number of states, including Ohio, Indiana, Kentucky, Michigan, Tennessee, Kentucky, West Virginia, New York, Pennsylvania, New Hampshire, Massachusetts, Connecticut, Maryland, Virginia, North Carolina, South Carolina, Georgia, Florida, Arkansas, and Mississippi.

38. Through a partnership with a company doing business under the name "OnTrac," LaserShip, Inc. is able to offer transcontinental delivery services and delivery in California, Oregon, Washington, Idaho, Nevada, Utah, Colorado, and Arizona.

39. To accomplish its business purpose, LaserShip, Inc. relies on Delivery Drivers to deliver packages for their customers.

40. Defendants misclassify their Delivery Drivers as "independent contractors."

41. In economic reality, Defendants' Delivery Drivers are "employees" as the term is defined by the FLSA and Ohio wage law.

42. Defendants' Delivery Drivers are workers engaged in interstate commerce.

43. Defendants' Delivery Drivers perform activities within the flow of interstate commerce by transporting goods traveling in interstate commers to their final destination after they arrive at Defendants' warehouse.

44. For example, individuals and businesses will purchase items online that are shipped to Defendants and then delivered by Defendants' Delivery Drivers to the residences and

businesses that made the purchase. These items are often shipped from outside of the state where the customer lives.

45. The Delivery Drivers provide the very services that Defendants offer to the public—"last-mile" delivery service.

46. Delivery Drivers are by far the largest category of workers working for LaserShip, Inc.

47. Determining workers' status as either employees or independent contractors is based on "economic reality," the employer's choice of label does not matter.

48. Upon information and belief, all of Defendants' Delivery Drivers are "independent contractors" and are required to provide the automobiles used to make deliveries on Defendants' behalf.

49. In other words, a nationwide delivery company claims that it does not employ any delivery drivers.

50. Defendants maintain supposed independent contractor relationships with thousands of Delivery Drivers at all times. Their business could not function without these individuals.

51. Upon information and belief, Delivery Drivers work for Defendants pursuant to Independent Contractor Operating Agreements that are materially the same.

52. Defendants' Delivery Drivers are paid according to the same basic terms set by Defendants.

53. Specifically, Defendants' Delivery Drivers are paid on a piece-rate basis for each package they deliver.

54.     Defendants set the piece-rate that the Delivery Drivers are paid and assign the deliveries to the drivers.

55.     Defendants required Delivery Drivers to provide and maintain an operable, safe, and legally compliant automobile to use in making deliveries for Defendants.

56.     Defendants required Delivery Drivers to incur and/or pay job-related expenses, including, but not limited to, automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for completing their job duties.

57.     Delivery Drivers have purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

58.     Defendants required Delivery Drivers to maintain or pay for insurance.

59.     Defendants have taken deductions from payments made to Delivery Drivers to cover various costs, including, but not limited to, Defendants' Mobile Communication Application, insurance, gasoline, uniforms, and cleaning uniforms.

60.     Upon information and belief, Delivery Drivers' Independent Contractor Operating Agreement remain in effect until terminated by either party.

61.     Delivery Drivers were able to decide the number of days they wanted to work in a given work week.

62.     Delivery Drivers were able to decide the number of hours they wanted to work in a given work week.

63. Upon information and belief, Defendants' Independent Contractor Operating Agreement does not preclude Delivery Drivers from also working as a delivery driver for other companies.

64. To work for Defendants, Delivery Drivers must have a driver's license, a car, to know how to use GPS, and to know how to use Defendants' package scanning system.

65. In other words, to work for Defendants, Delivery Drivers need very limited set of skills.

66. Nearly every working adult in the United States with a valid driver's license possesses the amount of skill necessary to work as a Delivery Driver for Defendants.

67. Delivery Drivers report to Defendants' warehouse and are assigned deliveries for the day.

68. Delivery Drivers then deliver the packages they have been assigned to the customers who are supposed to receive them.

69. Upon delivering the package, Delivery Drivers are required to scan the bar code on the package pursuant to company policy to confirm the package has been delivered.

70. Delivery Drivers attend one "ride along" training where they go with another Delivery Driver while completing their deliveries.

71. Delivery Drivers do not receive specialized training.

72. Delivering packages does not require specialized skill.

73. Defendants' business requires warehouse space, technology to track and dispatch packages, contracts with various businesses that need delivery services, workers to help with

logistics and coordination, workers to help deliver the packages, automobiles to make the deliveries, and hand-held devices to track deliveries once they are completed.

74.     Delivery Drivers provide the last two items on the list—a functioning automobile and a cell phone.

75.     Defendants required Delivery Drivers to provide their own automobiles to complete deliveries.

76.     There are no special requirements for the Delivery Drivers' automobiles—as long as they are operational, insured, and can be used to make the deliveries, they are acceptable to Defendants.

77.     Defendants required Delivery Drivers to provide their own cellphone or to rent a scanning device to use while completing deliveries.

78.     Defendants took a deduction from the wages of Delivery Drivers who used their own cellphone to cover costs associated with use of Defendants' Mobile Communication Application.

79.     There were no special requirements for the Delivery Drivers' cell phones other than that they had to be "smart" phones capable of downloading and using Defendants' app while on the road making deliveries.

80.     If Delivery Drivers did not have a cell phone to use or preferred not to use their own cell phone, Defendants took a deduction from the Delivery Drivers' wages for the use of a scanning device.

81.     Defendants required Delivery Drivers to use data from their cell phone data plan to complete deliveries and use Defendants' app.

82.     Defendants require Delivery Drivers to maintain certain insurance.

83.     If Delivery Drivers did not purchase a certain level of insurance themselves, Defendants took deductions from the Delivery Drivers' pay for the cost of insurance.

84.     Defendants required Delivery Drivers to wear uniforms in order to comply with customer-imposed requirements and for security purposes.

85.     Defendants required Delivery Drivers to purchase uniforms.

86.     Defendants solicited clients to generate deliveries for Delivery Drivers to complete.

87.     Defendants provided packages for Delivery Drivers to deliver.

88.     Defendants provided dispatch services to Delivery Drivers.

89.     Defendants provided warehouse space.

90.     Delivery Drivers were paid at a set rate per package delivered.

91.     When they reported to work, Delivery Drivers received sets of packages to deliver from Defendants.

92.     Delivery drivers did not have an opportunity to increase their profit based on their skill.

93.     When they were on the road, Delivery Drivers were restricted by the laws of the road from completing their work in a substantially faster way such that it would be more profitable.

94.     If Delivery Drivers wanted to make more money, they simply had to work more.

95.      The tasks completed by Delivery Drivers were controlled by Defendants.

96.     Defendants required the Delivery Drivers to drive to the destinations they were assigned and to drop off the packages that they were told to drop off.

97.     There was no discretion for Delivery Drivers to exercise in completing these tasks. The Delivery Drivers were controlled by the basic assignments given to them by Defendants and were required to follow the laws of the road while completing those deliveries.

98.     Defendants required Delivery Drivers to follow the same company-created procedures when they picked up their deliveries from the warehouse.

99.     When Delivery Drivers completed a delivery, they were required to scan the delivery using either a scanning device or Defendants' app in their phone.

100.    Delivery Drivers' job was simply picking up packages from Defendants' warehouse and delivering them to customers using an automobile.

101.    Defendants permitted Delivery Drivers to determine the specific streets they took when completing Defendants' deliveries.

102.    Defendants permitted Delivery Drivers to choose what, if any, radio programs, music, or podcasts they would listen to while making deliveries.

103.    Defendants Independent Contractor Operating Agreement permitted Delivery Drivers to hire drivers, helpers, or workers to assist in completing Defendants' deliveries.

104.    The delivery services provided by Delivery Drivers is integral to Defendants' business.

105.    Defendants sell delivery services to the general public.

106.    Defendants' Delivery Drivers are the individuals who actually provide the delivery service.

107.    Defendants have a staff of thousands of Delivery Drivers at all times and could not exist without those Delivery Drivers.

## Plaintiff's Individual Factual Allegations

108.     Plaintiff worked for Defendants as a Delivery Driver in Ohio from March 2021 to June 2021.

109.     Defendants misclassified Plaintiff as an "independent contractor," when, in economic reality, Plaintiff was Defendants' "employee" as the term is defined by the FLSA and Ohio wage law.

110.     Plaintiff did not contract with Defendants through a corporate entity.

111.     Plaintiff did not operate a small business.

112.     Defendants paid Plaintiff on a piece-rate basis for each package he delivered.

113.     Defendants paid Plaintiff $2.10 per package delivered.

114.     Defendants did not reimburse Plaintiff for his automobile expenses.

115.     Defendants required Plaintiff to provide his own automobile to use to make Defendants' deliveries.

116.     Plaintiff regularly worked between 5 and 6 hours per day and seven days per week.

117.     Plaintiff worked more than forty hours in a single work week during at least one workweek.

118.     Plaintiff did not receive time-and-a-half his regular payrate for the hours he worked in excess of 40 hours in a workweek.

119.     Plaintiff did not work for another company while working for Defendants.

120.     Plaintiff reported to Defendants' warehouse, where he was assigned deliveries for the day.

121.     Defendants' dispatchers assigned the deliveries to be completed by Plaintiff.

122.    Plaintiff had no discretion to exercise in completing Defendants' deliveries.

123.    If Plaintiff wanted to take a day off, he had to find a replacement driver to cover his deliveries, who had to be approved by Defendants.

124.    Plaintiff attended one "ride along" training with another Delivery Driver while completing that driver's deliveries.

125.    Plaintiff did not receive specialized training to become a Delivery Driver for Defendants.

126.    Plaintiff never hired additional drivers, helpers, or workers to assist in completing Defendants' deliveries.

127.    Defendants required Plaintiff to provide and maintain an operable, safe, and legally compliant automobile to use in making deliveries for Defendants.

128.    Defendants required Plaintiff to provide his own cellphone to use while completing deliveries for Defendants.

129.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for completing his job duties.

130.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

131.    Defendants required Plaintiff to maintain or pay for insurance.

14

132.     Defendants required Plaintiff to purchase and wear a uniform while completing deliveries for Defendants.

133.     Defendants took deductions from payments made to Plaintiff to cover various costs, including (but not limited to): Defendants' Mobile Communication Application, insurance, gasoline, uniforms, and cleaning uniforms.

134.     Plaintiff did not receive any expense reimbursement payments from Defendants.

135.     Plaintiff was not reimbursed for his automobile expenses.

136.     After accounting for and deducting automobile expenses, Plaintiff received less than minimum wage for each hour worked, and less than time and a half his regular hourly rate for overtime hours worked.

137.     Plaintiff has worked over 40 hours in a single workweek, but was never paid time and a half his regular hourly rate.

138.     Defendants did not track Plaintiff's actual automobile expenses.

139.     Defendants did not collect receipts or other records of Plaintiff's automobile or other job-related expenses.

140.     Defendants never attempted to determine Plaintiff's automobile expenses incurred on Defendant's behalf.

141.     Defendants have failed to pay Plaintiff minimum wage or overtime as required by law.

## Collective Action Allegations

142.    Plaintiff brings the First and Second Counts on behalf of himself and all similarly situated current and former Delivery Drivers who have completed deliveries for LaserShip, Inc. in the State of Ohio during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

143.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully misclassifying Plaintiff and the FLSA Collective as independent contractors, refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, failing to reimburse Delivery Drivers for automobile expenses and other job-related expenses, and failing to pay overtime at time and a half the Delivery Drivers' regular rate. Plaintiff's claims are essentially the same as those of the FLSA Collective.

144.    Defendants' unlawful conduct is pursuant to a company policy or practice.

145.    Defendants are aware or should have been aware that federal law required the Delivery Drivers to be classified and paid as employees based on the circumstances of their work and the economic reality of the situation.

146.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

147.    Defendants are aware or should have been aware that employees paid a piece-rate are entitled to overtime at time and a half their regular hourly rate, as determined on a week by week basis, for hours worked in excess of 40 hours per week.

148.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

149.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

150.    The FLSA Collective members are readily identifiable and ascertainable.

151.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

152.    Plaintiff brings the Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former Delivery Drivers who have completed deliveries for LaserShip, Inc. in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter (the "Rule 23 Ohio Wage Subclass").

153.    Plaintiff brings the Seventh Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former Delivery Drivers who have completed deliveries for LaserShip, Inc. in the State of Ohio between the date six years prior to the filing of the original complaint and the date of final judgment in this matter (the "Rule 23 Ohio Unjust Enrichment Subclass").

154.    Together, the Rule 23 Ohio Wage Subclass and Rule 23 Ohio Unjust Enrichment Subclass constitute the "Rule 23 Ohio Class."

155.    Excluded from the Rule 23 Ohio Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is

assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Ohio Class.

156.    The number and identity of the Rule 23 Ohio Class members are ascertainable from Defendants' records.

157.    The hours assigned and worked, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Ohio Class Member are determinable from Defendants' records.

158.    All of the records relevant to the claims of Rule 23 Ohio Class Members should be found in Defendants' records.

159.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

160.    Notice can be provided by means permissible under Rule 23.

161.    The Rule 23 Ohio Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

162.    There are more than 50 Rule 23 Ohio Class members.

163.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Ohio Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Ohio Class member in separate actions.

164.    Plaintiff and the Rule 23 Ohio Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, the OMFWSA, and O.R.C. § 4113.15.

165. Defendants have been unjustly enriched by Plaintiff and the Rule 23 Ohio Class members in the same way—by Plaintiff and the Rule 23 Ohio Class members providing automobiles for use in their business at no cost to Defendants.

166. Plaintiff and the Rule 23 Ohio Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

167. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Ohio Class and has no interests antagonistic to the Rule 23 Ohio Class.

168. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

169. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

170. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

171. The Rule 23 Ohio Wage Subclass and the Rule 23 Ohio Unjust Enrichment Subclass are properly treated as subclasses pursuant to Rule 23(c)(5).

172.     Common questions of law and fact exist as to the Rule 23 Ohio Class members that predominate over any questions only affecting Plaintiff and the Rule 23 Ohio Class members individually and include, but are not limited to:

     a.  Whether Plaintiff and the Rule 23 Ohio Class members were misclassified as independent contractors;

     b.  Whether Plaintiff and the Rule 23 Ohio Class members were subject to the same or similar terms of employment and compensation;

     c.  Whether Plaintiff and the Rule 23 Ohio Class members had the same or similar job duties;

     d.  Whether Plaintiff and the Rule 23 Ohio Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

     e.  Whether Plaintiff and the Rule 23 Ohio Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

     f.  Whether Plaintiff and the Rule 23 Ohio Class were paid minimum wage;

     g.  Whether Plaintiff and the Rule 23 Ohio Class were paid time and a half overtime wages when they worked over 40 hours in a single work-week;

     h.  Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Class members for their actual expenses;

     i.  Whether Defendants reimbursed Plaintiff and the Rule 23 Ohio Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

     j.  Whether Defendants properly reimbursed Plaintiff and the Rule 23 Ohio Class members;

     k.  Whether Defendants took unlawful deductions from the pay of Plaintiff and the Rule 23 Ohio Class;

l.   Whether Plaintiff and the Rule 23 Ohio Class were actually paid the wage rate they were promised by Defendants;

m.   Whether Defendants failed to pay Plaintiff and the Rule 23 Ohio Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute";

n.   Whether Defendants' actions were willful;

o.   Whether Plaintiff and the Rule 23 Ohio Class conferred a benefit on Defendants that Defendants were aware of;

p.   Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Ohio Class;

q.   Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Ohio Class without compensating for it; and

r.   The nature and extent of class-wide injury and the measure of damages for those injuries.

173.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Ohio Class, Plaintiff will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

174.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

175.   Plaintiff and the FLSA Collective were misclassified as independent contractors by Defendants.

21

176.    Despite this label placed on their relationship by Defendants, Plaintiff and the FLSA Collective were employees of Defendants under the FLSA.

177.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

178.    Defendants paid Plaintiff and the FLSA Collective less than minimum wage for the hours they worked after accounting for the automobile expenses and other job-related expenses incurred by Plaintiff and the FLSA Collective.

179.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

180.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

181.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Overtime Wages – Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

182.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

183.    Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

184.    Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their regular rate for time worked in excess of forty hours per workweek.

185.    Plaintiff and the FLSA Collective were paid on a piece-rate basis.

186.    Plaintiff and the FLSA Collective were not paid time and a half their regular rate for hours worked in excess of 40 hours per week, even before accounting for unreimbursed expenses.

187.    By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

188.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Subclass)**

189.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

190.    Defendants paid Plaintiff and the Rule 23 Ohio Wage Subclass below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

191.    Because Defendants required Plaintiff and the Rule 23 Ohio Wage Subclass to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Ohio Wage Subclass minimum wage.

192.    By not paying Plaintiff and the Rule 23 Ohio Wage Subclass at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

193.    As a result of Defendants' violations, Plaintiff and the Rule 23 Ohio Wage Subclass are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 4**
**Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Subclass)**

194.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

195.    Plaintiff and the Rule 23 Ohio Wage Subclass worked more than forty hours in one or more workweeks.

196.    Because Defendants required Plaintiff and the Rule 23 Ohio Wage Subclass to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the Rule 23 Ohio Wage Subclass at least one and a half times their regular rate for time worked in excess of forty hours per workweek.

197.    Plaintiff and the Rule 23 Ohio Wage Subclass were paid on a piece-rate basis.

198.    Plaintiff and the Rule 23 Ohio Wage Subclass were not paid time and a half their regular rate for hours worked in excess of 40 hours per week, even before accounting for unreimbursed expenses.

199.    By not paying Plaintiff and the Rule 23 Ohio Wage Subclass proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

200.    As a result of Defendants' violations, Plaintiff and the Rule 23 Ohio Wage Subclass are entitled to damages, including, but not limited to, unpaid overtime wages, unreimbursed expenses, costs, and attorneys' fees.

**Count 5**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Subclass)**

201.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

202.    During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiff and the Rule 23 Ohio Wage Subclass were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

203.    O.R.C. § 4113.15(A) requires that Defendants pay Plaintiff and the Rule 23 Ohio Wage Subclass all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

204.    By diverting a portion of the wages paid to Plaintiff and the Rule 23 Ohio Wage Subclass back to the company by requiring Plaintiff and the Rule 23 Ohio Wage Subclass to use

their own cars to complete United Courier deliveries, Defendants have failed to pay Plaintiff and the Rule 23 Ohio Wage Subclass all wages due to them.

205.    Upon information and belief, on one or more occasions, Plaintiff and the Rule 23 Ohio Wage Subclass were not paid in accordance with the agreed-upon piece-rate for each job.

206.    By failing to pay Plaintiff and the Rule 23 Ohio Wage Subclass all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

207.    Plaintiff and the Rule 23 Ohio Wage Subclass's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

208.    Plaintiff's and the Rule 23 Ohio Wage Subclass's entitlement to the wages sought herein is and has been undisputed.

209.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

210.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Ohio Wage Subclass are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 6**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiff and the Rule 23 Ohio Wage Subclass)**

211.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

212.    A willful violation of the FLSA is a criminal act. 29 U.S.C. § 216(a).

213.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiff and the Rule 23 Ohio Wage Subclass have been injured as a result.

26

214.     O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

215.     As a result of Defendants' willful violations of the FLSA, Plaintiff and the Rule 23 Ohio Wage Subclass are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**Count 7**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Ohio Unjust Enrichment Subclass)**

216.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

217.     The Plaintiff and the Rule 23 Ohio Unjust Enrichment Subclass have conferred a benefit on Defendants by using their own cars to work for Defendants.

218.     Defendants have knowledge of the benefit conferred on them by Plaintiff and the Rule 23 Ohio Unjust Enrichment Subclass.

219.     Defendants have accepted the benefit conferred on them by Plaintiff and the Rule 23 Ohio Unjust Enrichment Subclass.

220.     That benefit includes, but is not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products and services.

221.     It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the Plaintiff and the Rule 23 Ohio Unjust Enrichment Subclass without commensurate compensation.

222.    Plaintiff and the Rule 23 Ohio Unjust Enrichment Subclass are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE,** Plaintiff Keith Love prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the Rule 23 Ohio Class and counsel of record as Class Counsel.

E.    An award of unpaid minimum wages, overtime wages, and unreimbursed expenses due under Section 34a, O.R.C. § 4113.15, and the OMFWA.

F.    An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

G.    An award of restitution for unjust enrichment.

H.    Liquidated damages under O.R.C. § 4113.15.

I.    Compensatory and punitive damages under O.R.C. § 2307.60.

J.    An award of prejudgment and post-judgment interest.

28

K.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted,

/s/ *Riley Kane*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Riley E. Kane (Ohio Bar No. 0100141)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8714
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*rkane@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Riley Kane*
Riley Kane